UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID HICE, JOSEPH MOORE and CHRISTINA BARLOW, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) Case No. 2:24-cv-896-WSH ) ) |
| v. | ) |
| EQT CORPORATION, et al., | ) ) |
| Defendants. | ) ) |

**EQT CORPORATION AND EQT PRODUCTION COMPANY'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR CONTEMPT/STRIKE**

Plaintiffs persist in their effort to conceal from Defendants EQT Corporation and EQT Production Company (collectively, "EQT") the data Plaintiffs claim supports their injunction request against EQT. Plaintiffs should either produce the complete data or be prevented from using the experts that rely on that data, with an appropriate updated due date for EQT's Sur-Reply.

**I.      Plaintiffs remain in violation of this Court's November 15 Order.**

Plaintiffs initially claim in their Opposition to EQT's Motion for Contempt and to Strike Expert Reports (the "Motion") that they have complied with the Court's November 15 Order upon filing an unredacted version of the Stolz Preliminary Report under seal and circulating a copy of that version to EQT a day later. *See* ECF No. 65, pp. 4, 6-7. Plaintiffs are wrong, as the November 15 Order makes clear that if Plaintiffs wanted to invoke the protections that this Court had "provisionally" extended to the "unpublished proprietary data" underlying the Stolz Preliminary Report, then Plaintiffs would be required to provide both EQT and the Court with "full, unredacted copies" of the same—not just the six-page Stolz Preliminary Report in isolation. *See* ECF No. 56, p. 1 (referring to "Dr. Stolz's unpublished *proprietary data*, related figures, and charts plotting such data" as standalone "materials") (emphasis added). Despite EQT's repeatedly ignored efforts to have Plaintiffs comply with this express directive without involving this Court, Plaintiffs have

still not provided the data underlying the Stolz Preliminary Report to EQT.  *See* ECF No. 60, pp. 4-5 & **Exhibit 1**, 11/18/24 E-Mail Chain.[1]  Because Plaintiffs remain in violation of the November 15 Order, EQT's Motion should be granted on this basis alone.

## II. Plaintiffs similarly continue to violate Rule 26.

Although Plaintiffs' contempt of the November 15 Order should end the Court's inquiry, their corresponding violation of Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure separately and independently entitles EQT to relief.  Rule 26(a)(2)(B) requires a party to disclose all "facts or data considered" by an expert witness in forming his opinions.  *See* Fed. R. Civ. P. 26(a)(2)(B)(ii).  This obligation to disclose expert data, which is to be "interpreted broadly," exists to prevent unfair surprise and prejudice to an opposing party, while affording the opportunity to meaningfully test an adversarial expert's opinions.  *See* Fed. R. Civ. P. 26, Adv. Comm. Notes to 2010 Amendments; *Wingard v. U.S.*, 2022 WL 17093616, at *2 (W.D. Pa. Nov. 21, 2022) ("Nothing causes greater prejudice than to have to guess how and why an adversarial expert reached his or her conclusion.") (internal quotation marks omitted); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 1996 WL 900345, at *2-4 (E.D. Pa. July 16, 1996) (ordering disclosure of data underlying expert report pursuant to Rule 26(a)(2)(B) "from the standpoint of fairness, effective cross-examination, and upon consideration of the preparation of adversarial expert testimony[.]").  As such, a party's failure to comply with Rule 26(a)(2)(B) warrants preclusion of the undisclosed expert evidence at issue.[2]  Plaintiffs do not even attempt to argue that they have complied with

---

[1] Plaintiffs assert that EQT misconstrues the November 15 Order's scope by "conflat[ing] the data contained *within* Dr. Stolz's report with [its] underlying raw data," *see* ECF No. 65, pp. 2, 6 (emphasis original), but nothing in the November 15 Order supports this arbitrary distinction (or contemplates that Plaintiffs would be able to file the Stolz Preliminary Report under seal while withholding all of its supporting "raw data").  *See generally* ECF No. 56.  That is because the November 15 Order dictates the opposite.  Plaintiffs' attempted line-drawing with respect to Dr. Stolz's data is moreover disingenuous where Plaintiffs never communicated to EQT or the Court as part of their Sealing Motion that they intended to withhold the entirety of the underlying data that allegedly supports Dr. Stolz's opinions, nor did they take this position (or respond at all) to meet and confer efforts related to EQT's present Motion.

[2] *See* Fed. R. Civ. P. 37(c)(1); *Audubon Eng'g Co. LLC v. Int'l Procurement & Contracting Grp. LLC*, 647 Fed.Appx. 95, 99 (3d Cir. 2016); *Kimmel v. Mass. Bay Ins. Co.*, 2023 WL 8714336, at *12-13 (D.N.J. Dec. 15, 2023); *Ravo v. Covidien LP*, 55 F.Supp.3d 766, 776 (W.D. Pa. 2014).

2

Rule 26(a)(2)(B), because they cannot. The Stolz Preliminary Report and the portions of the Hickman Preliminary Report that rely on Dr. Stolz's undisclosed data should accordingly be precluded.

### III.    Plaintiffs' various excuses for failing to comply with the November 15 Order and Rule 26 have no merit.

Plaintiffs cannot justify their noncompliance. Plaintiffs first assert that, because federal regulations and Institutional Review Board ("IRB") protocols purportedly "require[] maintaining the anonymity of study participants," filing the Stolz Preliminary Report's undisclosed data, even under seal, would violate such requirements. *See* ECF No. 65, pp. 3, 8. While Plaintiffs cite no case law for the proposition that these requirements could override their disclosure obligations in this matter, federal regulations and IRB protocols governing human research studies do not actually require strict confidentiality of underlying research data or identifiable information in all circumstances. *See* 45 CFR 46.111(a)(7) (IRBs must ensure that "*[w]hen appropriate*, there are *adequate provisions* to protect the privacy of subjects and to maintain the confidentiality of data.") (emphasis added). Indeed, courts have vacated protective orders sealing the identifying information of participants subject to human research studies under oversight of an IRB when disclosure of such information was appropriate, as is the case here. *See, e.g.*, *Bell v. Am. Int'l Indus.*, 627 F.Supp.3d 520, 536 (M.D. N.C. 2022); *Matter of Johnson & Johnson v Northwell Health Inc.*, 2024 WL 4438319, 2024 NY Slip Op 04909 (NY App. Div. 1st Dep't Oct. 8, 2024). Plaintiffs therefore cannot rely on federal regulations and IRB protocols to frustrate EQT's access to the data at issue where any confidentiality and privacy concerns can be shielded from public disclosure through such measures as a sealing order (like the November 15 Order here) or a protective order.

Plaintiffs next claim that federal courts' limited and less stringent approach to affidavits and hearsay materials in preliminary injunction proceedings somehow relieves Plaintiffs from complying with the November 15 Order and Rule 26, *see* ECF No. 65, pp. 5, 7-8 & n.1, but not a single case relied on by Plaintiffs holds that mandatory injunctive relief is appropriate when a movant conceals allegedly "critical" adversarial expert data, *see* ECF No. 60, p. 2 & n.1, from both a counterparty and the court. Plaintiffs finally "implore" this Court to overlook their decision not to comply with the Court's November 15 Order and Rule 26 and to just trust them that the Stolz and Hickman Preliminary Reports constitute "credible and objective evidence" in support of their request for extraordinary and mandatory injunctive relief against EQT. *See* ECF No. 65, pp. 1, 8. The problem with this is that Plaintiffs' failure to provide the water sampling data on which both of those Reports are based prevents EQT and this Court from evaluating the legitimacy of that "evidence." *See Soldo v. Sandoz Pharma. Corp.*, 244 F.Supp.2d 434, 557 (W.D. Pa. 2003) (in evaluating admissibility of expert testimony, court must first "determine whether the proffered expert testimony is based on sufficient facts or data.") (quoting, in part, Fed. R. Evid. 702).[3] In sum, Plaintiffs simply offer no legitimate rationale for their refusal to disclose under seal the data that their experts depend upon.

IV. **Plaintiffs' belated request for additional protections with respect to Dr. Stolz's underlying data is unnecessary and should be denied.**

After failing to justify their ongoing noncompliance with the November 15 Order and Rule 26, Plaintiffs pivot and ask that the Court allow them to produce Dr. Stolz's underlying water

---

[3] Indeed, the six-page Stolz Preliminary Report purports to "brief[ly]" summarize 75 undisclosed and unknown water samples via a series of vague charts that Dr. Stolz believes "clearly indicate" "degraded" water quality in the Greene County area, *see* ECF No. 59, even though EQT has had no ability to review and challenge the water sampling data that allegedly informs this conclusion. Plaintiffs' contention, in turn, that Mr. Hickman only tangentially relied upon Dr. Stolz's undisclosed data, *see* ECF No. 65, p. 8, is belied by the erroneous Hickman Preliminary Report itself, in which Mr. Hickman repeatedly refers across multiple sections to the same water sampling data—that EQT has been unable to assess—to opine "with reasonable certainty" that surrounding water supplies have been contaminated as a result of EQT's operations. *See* ECF No. 55, Ex. 1 at Ex. B, pp. 10-13, 14-15, 43-49.

sampling data in a redacted "format that maintains the confidentiality of study participants and omits all identifiable information." *See* ECF No. 65, p. 8. The Court should deny this request. First, Plaintiffs offer no case law for this request and merely revert to their misplaced reliance on federal regulations and IRB protocols. *See id*. Second, more than adequate protections currently exist for the data at issue to be provided *in full* to EQT since this Court has already entered the November 15 Order, which allows Plaintiffs to file the data under seal and limits EQT's use of such information to this matter alone. *See* ECF No. 56.[4] Plaintiffs' late-stage attempt to defend their noncompliance with unnecessary and unwarranted protections concerning the data they have yet to disclose should be rejected.

EQT respectfully requests that Plaintiffs have two options: (1) provide all of Dr. Stolz's data in unredacted form to EQT, either pursuant to the existing process set forth in the November 15 Order or under the protection of the protective order EQT has provided herein, by December 13, 2024; or (2) this Court shall strike the Stolz Preliminary Report in its entirety, along with the portions of the Hickman Preliminary Report that rely on the Stolz Preliminary Report. EQT also requests that it be provided adequate time to file its Sur-Reply after either of those options are chosen. EQT has submitted a revised proposed order capturing this requested relief.

---

[4] Even if this were not the case, Plaintiffs have repeatedly ignored EQT's attempts to arrive at a stipulated protective order that would address this exact issue—a measure that this Court strongly encouraged in the November 15 Order itself. *Cf*. ECF No. 60, p. 3, *with* ECF No. 56, p. 2. EQT respectfully submits that its previously proposed protective order, attached hereto as **Exhibit 2** for the Court's consideration, should be entered. And with both the November 15 Order and a targeted protective order in effect, the notion that Plaintiffs could be permitted to finally produce Dr. Stolz's underlying data with *redactions* as to the identifying information of study participants would not only defy the existing November 15 Order and Rule 26, but is plainly unreasonable. EQT and its experts will need such information to better understand the geographic scope of Dr. Stolz's water sampling, evaluate whether the water samples at issue were collected from the properties of individuals who have offered lay affidavits in this matter, and more.

                Respectfully submitted,

Date:  December 3, 2024          _____
Mark K. Dausch, Esquire
PA I.D. # 205621
Carla M. Castello, Esquire
PA I.D. # 326808
James V. Corbelli, Esquire
PA I.D. # 56671
Andrew C. DeGory, Esquire
PA I.D. # 327838
**Babst, Calland, Clements & Zomnir, P.C.**
Two Gateway Center, 6th Floor
603 Stanwix Street
Pittsburgh, PA 15222
(412) 394-5400 – Phone
mdausch@babstcalland.com
ccastello@babstcalland.com
jcorbelli@babstcalland.com
adegory@babstcalland.com
*Counsel for Defendants,*
*EQT Corporation & EQT Production Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing *Reply to Plaintiffs' Opposition to Motion for Contempt/Strike* was served upon all counsel of record via the Court's electronic filing system on the 3rd day of December, 2024.

_____
Mark K. Dausch, Esquire