IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID HICE, JOSEPH MOORE, CHRISTINA BARLOW, *individually, and on behalf of all others similarly situated*; <br><br> Plaintiffs, <br><br> v. <br><br> EQT CORPORATION, *a Pennsylvania corporation*; EQT PRODUCTION COMPANY, *a Pennsylvania corporation*; BEUSA HOLDINGS INC., *a Delaware corporation*; BEUSA ENERGY, LLC, *a Delaware limited liability company*; and EVOLUTION WELL SERVICES OPERATING, LLC, *a Delaware limited liability company*; <br><br> Defendants. | Civil Action No. 24-896 |

## MEMORANDUM AND ORDER OF COURT

Plaintiffs' Motion for Preliminary Injunction (Docket No. 22) is among the motions presently pending in the above-captioned matter. In such motion, Plaintiffs seek preliminary injunctive relief under Rule 65 that would direct Defendants EQT Corporation and EQT Production Company (together, "EQT") to provide individuals affected by the "Frac-Out" alleged in the operative complaint with clean drinking water and information about possible water contamination. (Docket No. 22 at 1). More specifically, Plaintiffs are asking the Court to order EQT to provide safe drinking water by, *e.g.*, water buffalos and weekly water delivery comparable to what EQT has provided in the past, and Plaintiffs are further asking the Court to order EQT to deliver an informational mailer to residents of Freeport and Springhill Townships about possible water contamination, water delivery, and contact information for procuring additional water

delivery if needed. (Docket No. 22-1). EQT opposes the motion for a preliminary injunction. (Docket No. 34). For the reasons set forth herein, the motion will be denied.

I.      **STANDARD OF REVIEW**

Preliminary injunctions are appropriate in "extraordinary" situations. *Delaware State Sportsmen's Ass'n Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 200 (3d Cir. 2024), *cert. denied sub nom. Gray v. Jennings*, 145 S. Ct. 1049, 220 L. Ed. 2d 380 (2025) ("For all these reasons, a preliminary injunction 'is an extraordinary remedy that should be granted only in limited circumstances.'" (quoting *Mallet & Co. v. Lacayo*, 16 F.4th 364, 391 (3d Cir. 2021))). Four factors are relevant to the Court's decision to grant or deny a motion for preliminary injunctive relief: "(1) the likelihood that the moving party will succeed on the merits; (2) the extent to which the moving party will suffer irreparable harm without injunctive relief; (3) the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; and (4) the public interest." *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 356–57 (3d Cir. 2007) (quoting *Shire U.S. Inc. v. Barr Labs. Inc.*, 329 F.3d 348, 352 (3d Cir. 2003)). The first two factors are the "most critical." *Boynes v. Limetree Bay Ventures LLC*, 110 F.4th 604, 609 (3d Cir. 2024) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Unless the first two factors are present, an injunction shall not issue. *Id.*; *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484 (3d Cir. 2000) ("A court may not grant this kind of injunctive relief without satisfying these requirements, regardless of what the equities seem to require.").

II.     **DISCUSSION**

This case is based on Plaintiffs' belief that the water in and around New Freeport is unsafe as the result of a "Frac-Out" on June 19, 2022, when "a hydraulically fractured well owned and operated by EQT injected hazardous substances and industrial waste into the water supply of

2

surrounding residents." (Docket No. 52 at 1). A little over a year after the Frac-Out, in August 2023, EQT held a townhall meeting in New Freeport to address water complaints that had been reported to the Pennsylvania Department of Environmental Protection ("DEP"). (*Id.* ¶ 63). As a result of the meeting, EQT provided water buffalo delivery to some individuals. (*Id.*). However, later that year (2023), EQT said that this water delivery service would be continued only for affected residents for one year, and only if such residents released claims and agreed not to publicize the offer or make disparaging remarks about EQT. (*Id.* ¶ 67). In their motion for preliminary injunction and brief, Plaintiffs argue that EQT's actions in late 2023 put them in a bind, because most residents cannot afford their own water delivery. (Docket No. 23 at 2). Without Court-ordered relief, Plaintiffs fear that they will be compelled to go back to using their contaminated well water. (*Id.* at 23).

In addressing the factors relevant to the Court's determination of whether it is appropriate to order preliminary injunctive relief, Plaintiffs argue that: (1) they are likely to succeed on the merits of their claims (Hazardous Sites Cleanup Act, Negligence, Strict Liability, and etc.) where DEP reports and observations by EQT's own on-site representatives confirm a known communication event with another well and where there is evidence of subsequent water contamination and health issues; (2) Plaintiffs and putative class members will suffer irreparable harm absent a preliminary injunction because of their exposure to unsafe drinking water (unknowingly with respect to those who have not been appropriately notified of the contamination event), and because of uncertainty and financial hardship associated with alternative water sources ("The anxiety and financial strain caused by a lack of consistent access to safe drinking water are deteriorating a rural community with already limited access to resources, which has suffered this water crisis for over two years." (*id.* at 24)); (3) potential harm to EQT is outweighed by the

3

threatened injury or injuries to the affected residents where EQT will "incur minimal monetary cost to provide potable water to residents compared to the *exponential costs to remedy health effects should residents be forced to continue use of the contaminated groundwater*," especially where EQT was already providing water delivery for some affected residents, and where the population total for affected townships is fewer than about 500 residents (*id.* at 25); and (4) relief is in the public interest because access to safe drinking water is "fundamental" and an "unusually compelling" interest, as reflected in several Pennsylvania statutes, including the Hazardous Sites Cleanup Act (*id.* at 27).

For now, the Court will assume without deciding that Plaintiffs have demonstrated a likelihood of success on the merits of at least some of their claims, in satisfaction of the first preliminary injunction factor. That brings the Court to consider whether Plaintiffs will suffer irreparable harm without preliminary injunctive relief. Plaintiff seeking preliminary injunctive relief "ha[ve] the burden of proving a 'clear showing of immediate irreparable injury.'" *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) (quoting *Continental Group, Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 359 (3d Cir. 1980)). An important distinction to note is that an immediate, irreparable injury is not the same as a "serious or substantial" injury; rather, for an injury to be irreparable, it "must be of a peculiar nature, so that compensation in money cannot atone for it." *Id.* (quoting *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)). *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."). If a loss may be addressed by money damages, such loss is not the type to justify the issuance of injunctive relief. *ECRI*, 809

F.2d at 226 (quoting *In re Arthur Treacher's Franchisee Litigation*, 689 F.2d 1137, 1145 (3d Cir. 1982)); *Adams*, 204 F.3d at 484–85 ("The irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages."). For class actions, the Court additionally considers that it is generally inappropriate to "grant a preliminary injunction to [an] entire group of plaintiffs if there is [only] evidence that some, but not all, of the plaintiffs will suffer irreparable harm." *Adams*, 204 F.3d at 479. A preliminary injunction must be based on "particular situations of the moving parties," and "resting a preliminary injunction for the many" on evidence pertaining to only "a few" is inappropriate unless plaintiffs lay an "adequate foundation from which one could draw inferences" that the few and the many are "similarly situated … in terms of irreparable harm." *Id.* at 487.

The Court has reviewed the record in this matter to determine whether Plaintiffs have shown that they will suffer irreparable harm without a preliminary injunction. Having considered the arguments and evidence submitted regarding irreparable harm, the Court finds Plaintiffs' showing of irreparable harm to be inadequate. In support of their motion, Plaintiffs submit, among other things, affidavits of named Plaintiff David Hice and, one member of the putative class, William Yoders. (Docket Nos. 23-15 and 23-16). Hice and Yoders relied on well water for all household needs until the summer of 2022 when they noticed changes in their water. (*Id.*). Hice explained that in July 2022, he noticed that his water was "black, discolored, and had a strange odor." (Docket No. 23-15, ¶ 6). Yoders similarly indicated that shortly after the Frac-Out, he and his wife noticed discoloration, greasiness, and a strange odor of their well water. (Docket No. 23-16, ¶ 10). Upon learning of the Frac-Out, Hice switched to bottled water for drinking and cooking but continued to use well water to shower and for other household uses for financial reasons.

(Docket No. 23-15, ¶ 10). He thereafter experienced lesions, blisters, and rashes. (*Id.* ¶ 11). Starting in August 2023, EQT provided Hice with a water buffalo and weekly water delivery. (*Id.* ¶ 15). EQT thereafter indicated that it would end its water delivery to Hice on July 22, 2024. (*Id.* ¶ 20). Regarding EQT's cessation of water delivery, Hice said that it is "difficult and hectic to have to buy water for [himself] constantly, and it has been a struggle financially" because he "cannot afford to pay for continued weekly water delivery." (*Id.* ¶ 21). Like Hice, Yoders received a water buffalo and water delivery from EQT starting in late summer 2023, but was notified by EQT that such service would stop on July 22, 2024. (Docket No. 23-16, ¶ 25). Yoders has also indicated that it is "difficult and hectic" to purchase his own water, and that it is "a struggle financially" because weekly water delivery is unaffordable. (*Id.* ¶ 26).

Without minimizing the financial burden faced by Plaintiffs and attendant stressors should they have to bear the financial burden of water delivery services pending the resolution of this case on the merits, the evidence that Plaintiffs have submitted does not show that the harms at stake in this suit cannot be addressed by money damages. Nor does the current record provide a basis for this Court to infer that the putative class is experiencing immediate irreparable harm such that the extraordinary relief of a preliminary injunction is warranted. Accordingly, Plaintiffs' motion for a preliminary injunction will be denied for lack of irreparable harm. In light of the Court's decision, it is not necessary for the Court to address the last two preliminary injunction factors.

### III. CONCLUSION

For all these reasons, the Court will <u>DENY</u> Plaintiff's Motion for Preliminary Injunction (Docket No. 22). Additionally, because EQT's Motion for Contempt and to Strike Expert Reports (Docket No. 60) relates to the motion for preliminary injunction, the Court will <u>DENY</u> such motion as moot.

Accordingly, the Court enters the following Order:

AND NOW, this 26th day of August 2025, IT IS HEREBY ORDERED that Plaintiffs' Motion for Preliminary Injunction (Docket No. 22) is **denied**, and EQT's Motion for Contempt and to Strike Expert Reports (Docket No. 60) is **denied as moot**.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Date:   August 26, 2025

cc/ecf:  All counsel of record